## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

Norma Powell,                          :
                                       :
            Plaintiff,                 :        **Hon. Joseph H. Rodriguez**
                                       :
       v.                              :        Civil Action No. 14-4395
                                       :
City of Ocean City, et. al.            :
                                       :        **<u>Opinion</u>**
            Defendants.                :
_____:


This matter comes before the Court on Motion for Summary Judgment [79] filed on behalf of Defendants City of Ocean City, Officer Laura Hall, and Sergeant D. Dubbs.  The Court has considered the written submissions of the parties, as well as the arguments made on the record during the hearing on July 13, 2016.  For the reasons expressed on the record that day, as well as those that follow, Defendants' motion is granted in part and denied in part.

### I.    <u>Background</u>

On July 11, 2012 Plaintiff Norma Powell was arrested and detained for driving under the influence after an eyewitness alerted police to the fact that Powell's vehicle struck the Longport Bridge Toll Booth causing damage

to her car and to the booth. See Officer Hall's incident Report, Ex. 2. Powell failed two components of a field sobriety test when she was unable to recite the alphabet and could not maintain balance. Id. On her own volition, Powell unsuccessfully attempted to perform the "Walk and Turn" test. Id. Officer Hall's Drinking-Driving Report indicated that Powell was unable to walk and stand, was swaying, had slurred speech with a sleepy demeanor, and that her eyes were bloodshot and her eyelids were droopy. See id. At the police station, Powell's lung disease and prescription medication prevented her from producing a reading on a breathalyzer and from producing a sufficient urine specimen despite being given and having consumed ten cups of water.[1] Id.

Sergeant Dubbs, the City's Drug Recognition Expert ("DRE") performed an independent evaluation of Powell and noted that he could not detect a smell of alcohol and concluded that Powell was under the influence of a CNS Depressant and/or a Narcotic Analgesic. See Drug Influence Evaluation Report, Ex. 7; Dubbs Dep. at 57:7-10.[2] Time passed without Powell producing a urine sample. As a result, she was taken to the Shore Memorial Hospital, where her blood was drawn and a urine sample was

---

[1] At some point Powell voided a small quantum of urine, but the sample spilled and was not tested. See Hall Dep. 94:24-25. There is no allegation that Powell was uncooperative at any time.
[2] Powell volunteered that she was taking Protonix, Roxicet, Lexipro, Trazadone, Synthroid, Spiriva, and Albuterol. See Dubbs Dep. at 57:19-23.

procured by a catheter.  <u>See</u> Officer Hall's incident Report, Ex. 2.
Defendant Officer Hall was present during the catheterization and held the
collection cup. <u>See</u> Hall Dep. at 60:1-25.  Powell, who was unconscious at
the time of the procedure, contends that she contracted an infection as a
result of the catheter.

On July 11, 2014, Powell filed a sixteen (16) count Complaint alleging
various causes of action against the City of Ocean City, Office Laura Hall,
and Sergeant Daniel Dubbs (Ocean City Defendants) and the Shore
Memorial Hospital, Nurse Page, and Nurse Ruiz (Hospital Defendants).
The Court granted partial summary judgment in favor of the Ocean City
Defendants on April 28, 2015.  Then, on December 1, 2015, the Court
denied the motions for summary judgment and to dismiss of both Shore
Memorial Hospital and Kathryn Page, R.N.  Defendant Jessica Ruiz's cross
motions were also denied, but without prejudice and with the right to refile
upon the conclusion of discovery.

Presently at issue are Defendants City of Ocean City's, Officer Laura
Hall's, and Sergeant Daniel Dubbs's motion for summary judgment as to
Counts II (excessive force), VI (unreasonable search and seizure), VIII
(conspiracy), X (municipal liability) and on the doctrine of qualified
immunity.

3

## II.   **Standard of Review**

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Andersen</u>, 477 U.S. at 256-57.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact.  <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

III.   **Analysis**

Defendants raise several arguments in favor of summary judgment. First, Defendants argue Plaintiff's failure to demonstrate that any force was employed during her catheterization and/or blood draw merits summary judgment on the excessive force claim as plead in Count II.  Second, Defendants contend that Plaintiff fails to demonstrate that the search and seizure were unjustified warranting summary judgment on Count VI. Third, Defendants argue that Plaintiff cannot establish that Defendants conspired or agreed to violate her civil rights as plead in Count VIII. Fourth, Defendants argue that summary judgment is warranted on Plaintiff's claim of municipal liability as plead in Count X.  Finally, Defendants argue that they are entitled to qualified immunity because Plaintiff cannot show that a constitutional right was violated or that the right was clearly established at the time of her arrest.

The Court will analyze the arguments within the context of the qualified immunity framework.

**Qualified Immunity**

The doctrine of qualified immunity provides that "government officials performing discretionary functions ... are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier 533 U.S. at 202, 121 S.Ct. 2151 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e]

issue, immunity should be recognized." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). <u>See also</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.). Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. <u>See</u> <u>Beers–Capitol v. Whetzel</u>, 256 F.3d 120, 142, n. 15 (3d Cir. 2001).

Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). Here, the Court will address whether the constitutional right Powell claims was violated was clearly established before addressing whether a constitutional violation occurred.

## A. Whether The Right Was Clearly Established

Plaintiff argues that the right to be free from a warrantless catheterization search was clearly established on July 11, 2012.  In this regard, Plaintiff relies on <u>Jiosi v. Twp. Of Nutley</u>, 332 N.J. Super. 169, 181, 753 A.2d 132 (2000) to establish that a law enforcement officer who orders a medical catheterization and whose participation in the procedure runs

afoul of medically accepted standards violates the Fourth Amendment rights of the individual subjected to catheterization.  Defendants argue that the law at the time of Powell's was unclear as to whether the dissipation of evidence contained in bodily fluids qualifies as exigence *per se*.

Recently, in <u>Missouri v. McNeely</u>, 133 S.Ct. 1552 (2013), the Supreme Court addressed "whether the natural metabolization of alcohol in the bloodstream presents a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." <u>Id.</u> at 1577.  The Court ruled that exigency, "consistent with general Fourth Amendment principles, . . . must be determined case by case based on the totality of the circumstances." <u>Id.</u>  In so ruling, the Supreme Court noted the previous uncertainty surrounding warrantless searches of bodily fluids in driving under the influence cases. <u>Id.</u>  "[C]ase law, like that of many sister states, had provided *de* facto, if not *de jure*, support for law enforcement to believe that alcohol dissipation in and of itself supported a finding of exigency for a warrantless search of bodily fluids in suspected driving-under-the-influence cases." <u>Id.</u>

Shortly after the holding in <u>McNeely</u>, the New Jersey Supreme Court ruled in favor of retroactive application of <u>McNeely</u> and, in so doing, noted the historical uncertainty of the law with respect to "warrantless searches

involving blood draws of suspected DWI drivers[.]" State v. Adkins, 221 N.J. 300, 313, 113 A.3d 734, 741–42 (2015).  Defendants here argue that the historical ambiguity of the need for a warrant in the collection of bodily fluids, as recognized by McNeely and Adkins, merits attachment of qualified immunity.  On this record, the Court disagrees.

Plaintiff here complains of an unreasonable intrusion by catheter in an effort to collect bodily fluids that was allegedly accomplished with the mechanical participation of the police.  The use of a catheter sets this case apart from the facts of McNeely and Adkins, both of which involved blood draws.  In addition, Defendants' proposed application of the dicta in McNeely with respect to the collection of bodily fluids misses the mark. While both cases suggest qualified immunity for the blood draw and the attempt to collect urine by way of a suspect urinating in a cup, catheterization, as the New Appellate Division recognized in Jiosi, is intimately intrusive and must be performed in a medically acceptable manner. 332 N.J. Super. at 177.  "Because it is clear that the collection and testing of urine intrudes upon the expectations of privacy that society has long recognized as reasonable ... these intrusions must be deemed searches under the Fourth Amendment." Skinner v. Railway Labor Executives' Assoc., 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L. Ed.2d 639, 660

(1989).

Likewise, the Supreme Court in <u>Schmerber</u> held "that the Constitution does not forbid the States['] minor intrusions into an individual's body under stringently limited circumstances in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." <u>Schmerber v. California</u>, 384 U.S. 757, 772, 86 S. Ct. 1826, 1835–36, 16 L. Ed. 2d 908 (1966).

In New Jersey, at the time of Powell's arrest the Appellate Division had established the magnitude of the intimacy of the intrusion of catheterization and the special consideration it merits as to the necessity of a warrant. "As the physical intrusion moves from the simple to the more elaborate, from the less to the more intrusive, we also consider the nature of the crime, the relevance of the evidence sought, the degree of risk to the person undergoing the procedure and the magnitude of the intrusion upon the dignity, privacy and bodily integrity of the individual." <u>Jiosi</u>, 332 N.J. Super. at 179, 753 A.2d at 137–38 (citing <u>Winston v. Lee</u>, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (no compelling need shown to remove a bullet from suspect's chest in light of other available evidence); <u>State v. Lawson</u>, 187 N.J. Super. 25, 28–29, 453 A.2d 556 (App. Div. 1982) (judicial support sought for the surgical removal of a bullet from suspect's thigh)).

The Court's dicta in <u>McNeely</u> did not abrogate the <u>Jiosi</u>'s application of Fourth Amendment protections in cases involving the use of a catheter.

As a result, the question of exigency becomes critical as the law at the time of Plaintiff's arrest was clearly established that a warrant was necessary for the use of a catheter absent exigent circumstances; there is no exigency *per se*.[3]  Both the United States Supreme Court and the New Jersey Appellate Division establish standards for exigency in the collection of bodily fluids.  In <u>Schmerber</u>, the Court noted that the type of crime and urgency for results informs the exigency analysis.

> The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' <u>Preston v. United States</u>, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

<u>Id.</u> at 771.  Likewise, in <u>Jiosi</u>, the Appellate Division articulated special concerns with medical procedures such as catheterization, that must be satisfied to justify a warrantless search.

---

[3] The unsettled question of law was whether a warrant is always required, despite exigent circumstances.

In reversing the trial court's grant of summary judgment, the

Appellate Division opined:

> In our view it is not enough to demonstrate that the procedure
> can be accomplished without harm to the "patient." Under the
> present circumstances where the sample is being taken, not for
> an accepted medical purpose but to further a criminal
> prosecution, constitutional rights of privacy are implicated
> "[b]ecause it is clear that the collection and testing of urine
> intrudes upon the expectations of privacy that society has long
> recognized as reasonable … these intrusions must be deemed
> searches under the Fourth Amendment." Skinner v. Railway
> Labor Executives' Assoc., 489 U.S. 602, 617, 109 S.Ct. 1402,
> 1413, 103 L. Ed.2d 639, 660 (1989). In this context the question
> of whether the procedure was done in a "medically accepted
> manner" entails more than the mechanics of the procedure. It
> must also encompass the question of whether the procedure
> was necessary for its intended purpose. The record before the
> motion judge was not fully developed in this regard, but on the
> proofs provided a jury could find that the period of time
> plaintiff was given to voluntarily urinate was insufficient to
> justify involuntary catheterization. The time lapse between
> plaintiff's last glass of water and the involuntary catheterization
> may have been as little as sixteen minutes.  Overall, the time
> between when plaintiff began taking water and the
> catheterization was only around forty-six minutes. What
> problems might have arisen by allowing plaintiff more time to
> voluntarily urinate were not explored at the summary judgment
> hearing.

Jiosi, 332 N.J. Super. at 177.

Here, Plaintiff was arrested for driving under the influence.  She

failed a field test performed at the police station.  She also exhibited

behaviors that Sgt. Dubbs states were consistent with drug use. At this

point, when coupled with the evidence of the damage to her car and the

eyewitness testimony that Powell struck the Longport Bridge Toll Booth, Powell could have been charged with reckless driving.  Thus, because the catheterization was done for the purpose of furthering a criminal investigation, that other factors may have already justified arrest, and the fact that there is insufficient evidence as to the necessity to catheterize Plaintiff after only an hour of waiting for her to produce a urine sample, there are questions of fact regarding exigency that preclude attachment of qualified immunity at this time.  Sgt. Dubbs states that the decision to send Powell to the hospital was made because they "had waited awhile" without offering any emergency circumstances or concerns about dissipation of evidence. <u>See</u> Dubbs Dep., 52:21-25-53:1-25.  In this regard, the Court consideration of whether there are exigent circumstances is " 'highly fact sensitive.' " <u>State v. Alvarez</u>, 238 N.J. Super. 560, 568–569, 570 A.2d 459 (App. Div. 1990) (quoting <u>State v. Lewis</u>, 116 N.J. 477, 487, 561 A.2d 1153 (1989)).  Therefore, questions related to whether a legitimate need for a urine sample existed at the time it was involuntarily taken.[4]

Moreover, Officer Hall participated in the catheterization procedure and questions of facts remain as to whether her conduct of holding the

---

[4] There are questions of fact related to consent.  Dubbs testifies that Powell gave consent at police headquarters to collect her urine. Dubbs Dep., 66:16-21.  Hall claims she inferred consent at the hospital because Powell did not object. Hall Dep. at 125:14-21.

collection tube and cup broke the sterile field and caused the procedure to be accomplished in violation of medically accepted standards. <u>See</u> Hall Dep. at 60:1-25; <u>Powell v. City of Ocean City</u>, No. 13-CV-4395 (D.N.J. December 1, 2015) (Dkt. Nos. 72, 73).

Finally, to the extent that Defendants argue that the law was unsettled or that they mistakenly believed they had the authority to perform a warrantless search under the present circumstances, there are questions of facts related to what the Defendants knew at the time, particularly given the fact that both police officers state that they did not receive any training regarding the procedures and circumstances permitting catheterization. <u>See</u> Dubbs Dep. 13:4, 15:7-11, 16:1—17:2; 19:17-19, 20:1-25, 27:19-25, 27:17-22 (no training on collection of urine), 28:6-11, 28:16-25; Hall Dep. at 20-21, 24:17-20, 32:12-25, 33:1-8 (collection of bodily fluid evidence), Chief Callahan Dep., 17:6-10.  Reasonableness of the officers' belief must be informed by facts.

As a result, the Court finds that the law was clearly established that a warrantless search by catheter was permitted at the time of Plaintiff's arrest upon a showing of exigent circumstances.  Here, there are genuine issues of fact related to whether such circumstances are present in this case and whether the police officer Defendants believed that their conduct

comported with the established requirements of the law at the time of Plaintiff's arrest.  Summary judgment is denied as to this prong of the qualified immunity analysis.

### B.  Whether Plaintiff's Constitutional Rights Were Violated

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). By its own words, therefore, Section 1983 "does not ... create substantive rights." Kaucher v.

County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n. 3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983:(1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of her rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

There is no dispute here that Sgt. Dubbs and Officer Hall were acting under the color of state law on July 11, 2012. Therefore, the question confronting the Court is whether Plaintiff suffered deprivation of her Constitutional rights.

## 1.  Count II Excessive Force

Summary judgment is denied as to Count II because there are questions of fact related to exigency and whether the catheterization was performed in a medically acceptable manner.

A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him. Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id. Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.' " Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865). See also Graham, 490 U.S. at 396, 109 S.Ct. 1865 ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.).

There is no dispute here that the blood draw and the catheterization were done without physical restraint of Plaintiff.  In this regard, this is not a circumstance where the defendant police officers employed force to restrain

a combative suspect during the course of their arrest and/or investigation. Compare, Cook v. Olathe Medical Center, Inc., 773 F.Supp.2d 990 (D. Kan. 2011) (catheterizing a combative DUI suspect by forcibly restraining and holding down the suspect).  Rather, the alleged use of force is use of the catheter itself and the fact that Officer Hall participated in the procedure, which Plaintiff argues violates the New Jersey Attorney General's Use of Force Policy.  That policy, in relevant part, provides:

> In situations where law enforcement officers are justified in using force, the utmost restraint should be exercised. The use of force should never be considered routine. In determining to use force, the law enforcement officer shall be guided by the principle that the degree of force employed in any situation should be only that reasonably necessary. Law enforcement officers should exhaust all other reasonable means before resorting to the use of force. It is the policy of the State of New Jersey that law enforcement officers will use only that force which is objectively reasonable and necessary.
>
> D. Mechanical Force
> 1. Mechanical force involves the use of some device or substance, other than a firearm, to overcome a subject's resistance to the exertion of the law enforcement officer's authority.
> 2. Examples include the use of a baton or other object, canine physical contact with a subject, or chemical or natural agent spraying.

Prior to being transported to Shore Memorial Hospital, Plaintiff was given ten cups of water and attempted, but was unable, to produce a urine sample at the police station. See Dep. Officer Hall, 19:13-22. According to Officer Hall, Plaintiff could not sufficiently urinate and was then taken to

the hospital where she was catheterized so that a urine sample could be collected and blood was drawn for analysis. See id., 19:2-6.  Officer Hall testified that Plaintiff was not given another opportunity to urinate at the hospital. Id. at 19:23-25. Plaintiff claims she contracted a serious infection as a result of the catheterization.

Summary judgment is not warranted at on Count II because questions of fact exist as to whether the catheterization was necessary and/or performed in a medically acceptable manner.  As previously discussed in the Court's Opinion and Order denying the Hospital Defendants' motion for summary judgment, pursuant to Jiosi questions of exigency and whether the catheterization was performed in a medically acceptable manner preclude summary judgment on this claim. See Powell v. City of Ocean City, No. 13-CV-4395 (D.N.J. December 1, 2015) (Dkt. Nos. 72, 73); Jiosi, 332 N.J. Super. 169.

In Jiosi, the plaintiff was arrested and charged with driving under the influence. Jiosi, 332 N.J. Super. 169. He was taken to the hospital where blood was drawn with the plaintiff's permission. Id. Like Plaintiff, Jiosi was involuntarily catheterized and there was a factual question as to whether more time could have been allotted for him to produce a urine sample without catheterization and or the results of the blood test to present. Id.

Powell continuously consumed water at the police station and could not void for approximately an hour and she was not given a chance to attempt to void her urine at the hospital before she was catheterized.  Like Jiosi, there are questions of fact related to whether the police could have waited more time for Powell to produce a urine sample. The presence of these similar factual disputes caused the Appellate Division in <u>Jiosi</u> to remand the matter to the trial court for further exploration.  The Court finds that reasoning persuasive.  In addition, there is a question of fact as to whether the catheterization procedure was performed in a medically acceptable manner. <u>See</u> Aff. of Cheryl McKnight, Ex. D; Hall Dep. 60:1-25 (agreeing that holding the collection cup with a finger on the catheter tubing was improvident).

Moreover, none of the factors informing reasonableness tilt toward summary judgment.  Here, the severity of the crime at issue is a driving under the influence charge; Powell ultimately plead to reckless driving. Given that Powell was taken to the station and removed from harm, there is no evidence that she posed an immediate threat to the safety of the officers or others, and the tests were not conducted for her own health emergency. Rather, the defendant officers state that they grew tired of waiting. Hall Dep. 83-84, 96:22-25-97:1-14; Dubbs Dep., 52:21-25-53:1-25.

In deposition, Dubbs testified that urinalysis is the best way to test for drugs and that he believed, based upon his assessment of Powell, that she was altered by drugs and not alcohol.  Dubbs Dep. 34:19-25-35:1-13. Balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake[, t]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Graham</u>, 490 U.S. at 396-397.

Here, given the relatively short lapse of time between Powell's consumption of water and her catheterization, there is a question of exigency that informs this claim; if exigency did not exist, Plaintiff may prevail at trial.  On the other hand, if exigency can be established at trial and it can be established that the procedure was performed in a medically acceptable manner, then given the absence of physical force used, catheterization standing alone is not sufficient grounds for an excessive force claim. <u>See</u>, <u>e.g.</u> <u>Hooper v. Pearson</u>, 2010 WL 2990809 (D. Utah July 26, 2010) (granting summary judgment on an excessive force claim where forcible catheterization was performed while police physically restrained an uncooperative DUI suspect).

On this record, there are questions of fact related to exigency and the manner in which the catheterization was performed.  Summary judgment is denied.

### 2.  Count VI Unreasonable Search and Seizure

For the reasons articulated in Section III.A., the Court finds that there are questions of fact related to the reasonableness of the police officers' decision to draw blood and catheterize Plaintiff at the time the procedures were conducted and the manner in which Hall participated in the catheterization.  Summary judgment is denied as to Count VI.

### 3.  Count VIII Conspiracy pursuant to 42 U.S.C. §§ 1983, 1985 and 1986.

Summary judgment is granted as to Plaintiff's conspiracy claims as plead in Count VIII because Powell fails to point to evidence in the record that demonstrates any "combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." Fioriglio v. City of Atlantic City, 996 F. Supp. 379, 385 (D.N.J. 1998). As a result, an essential element of conspiracy is missing and summary judgment is granted.

A plaintiff must establish the following for such a cause of action 42 U.S.C. § 1985(3):(1) A conspiracy; (2) for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) act in furtherance of the conspiracy; and (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States. Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting United Brotherhood of Carpenters & Jointers v. Scott, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). "It is well established that § 1985(3) does not itself create any substantive rights; rather, it serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere." Brown v. Philip Morris Inc., 250 F.3d 789, 805 (3d Cir.2001). A "meeting of the minds" is required for a civil rights conspiracy cause of action. Starzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008).

Here, Plaintiff merely suggests that Sgt. Dubbs and Officer Hall "acted in concert and conspired to violate plaintiff's . . . constitutional rights." See Pl. Opp. Br., p. 10. Without pointing to any evidence in the record, Plaintiff states that because Officer Hall failed to question her sergeant's orders to catheterize and draw blood from Plaintiff, she was acting as his "minion" and argues such conduct creates a genuine issue of material fact for trial. Id. at p. 11. Such conjecture is insufficient on a

motion for summary judgment. <u>Andersen</u>, 477 U.S. at 256-57. The record is devoid of evidence of an agreement among the Defendants to employ excessive force on Plaintiff or to illegally search her person. As a result, summary judgment is granted as to Plaintiff's claim in Count VIII brought pursuant to 42 U.S.C. § 1985.

Likewise, summary judgment is granted as to Plaintiff's claim bought pursuant to 42 U.S.C. § 1986 as plead in Count VIII because a Section 1986 claim cannot survive in the absence of a viable Section 1985 claim. <u>See</u> <u>Lee–Patterson v. N.J. Transit Bus Operations, Inc.</u>, 957 F. Supp. 1391, 1403 (D.N.J. 1997) (citing <u>Black v. Bayer</u>, 672 F.2d 309, 312–13, n. 4 (1982)).  In this regard, 42 U.S.C. § 1986 does not create an independent cause of action; section 1986 creates a cause of action against those "having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed[.]" 42 U.S.C. § 1986. Without a viable Section 1985 claim, a Section 1986 claim cannot survive. Because Plaintiff's § 1985 claim is without merit, summary judgment is granted on her § 1986 claim.

### 4. Count X Municipal Liability against the City of Ocean City

Summary judgment is denied as to Count X because there are questions of fact related to whether the City was deliberately indifferent to the obvious consequences of failing to train on the procedures for collecting urine.

A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory. Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom. Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "A showing of

simple or even heightened negligence will not suffice." <u>Board of County Comm'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. at 397, 407 (1997).

Here, Plaintiff has alleged a "failure-to-train" claim.  The record reflects and Plaintiff does not dispute that Defendants have provided ample evidence of training for DUI investigatory stops.  Plaintiff argues that the failure to specifically train with regards to involuntary, warrantless catheterization "may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989).  In this regard, Plaintiff's allegation is closely related to her ultimate injury.  <u>Id.</u>

The Defendants agree that no specific training regarding the use of catheterization to collect urine samples was provided by the City.  <u>See</u> Dubbs Dep. 13:4, 15:7-11, 16:1—17:2; 19:17-19, 20:1-25, 27:19-25, 27:17-22 (no training on collection of urine), 28:6-11, 28:16-25; Hall Dep. at 20-21, 24:17-20, 32:12-25, 33:1-8 (bodily fluid evidence), Chief Callahan Dep., 17:6-10.   To this extent, Plaintiff has created a genuine issue of fact regarding the City's failure to train.

However, to prove a § 1983 constitutional violation for failure to train, Plaintiff must also show that Defendant's conduct amounted to

deliberate indifference.  "[A]bsent a pattern of similar constitutional violations by untrained employees, [deliberate indifference] require[s] proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410, 117 S.Ct. 1382.  " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id., at 410.

In addition, Plaintiff must show that the deliberate indifference was the moving force behind Plaintiff's injuries.  In most cases, to qualify as the "moving force," the plaintiff needs to show that a pattern of tortious conduct, "rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident," caused her injury. Brown, 520 U.S. at 407-08.  The deliberate indifference "necessary to trigger municipal liability" likely requires the public entity to display "continued adherence to an approach that [it] know[s] or should know has failed to prevent tortious conduct by employees." Id. at 407; see also Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997).

Finally, Plaintiff is tasked with identifying specific training or policies that would prevent future harm and demonstrate that "the risk reduction ... is so great and so obvious that failure of those responsible for the content of

the training to provide [the proposed training or policy] can reasonably be attributed to a deliberate indifference...." Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1029–30 (3d Cir. 1991)).

The unrefuted evidence in the record demonstrates that Plaintiff's case was the first time a police officer in the City employed a catheter to extract a urine sample.  There is no pattern of similar constitutional violations and Plaintiff has not demonstrated more than a one-time negligent act. However, the Supreme Court in Brown, noted the possibility to prove an allegation of failure to train without evidence of a pattern. 520 U.S. at 409, 117 S. Ct. at 1391; see also Canton, 489 U.S., at 390, and n. 10, 109 S.Ct., at 1205, and n. 10 ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious ... that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need").

Thus, a failure to train may be proven in the absence of a pattern of constitutional violations only in a "narrow range of circumstances" where a "violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Brown, 520 U.S. at 409 (pattern not necessary to

show deliberate indifference where it would be "obvious that a policy or custom would lead to constitutional violations.").

In this regard, the Court finds that the fact that Powell has not established a pattern of Fourth Amendment violations by the City is not dispositive of her claims.  The Defendant police officers' jobs require them to collect bodily fluid samples and the Defendants have testified to a lack of training with respect to the collection of urine, which even when performed by urinating into a cup creates an obvious need for "specific tools to handle" the intimacy of the situation. <u>Brown</u>, 520 U.S. at 410. Here, Powell was involuntarily catheterized and Officer Hall participated in the medical procedure.  The Court finds that questions of facts exists precluding summary judgment as to whether the "glaring omission" of failing to train on the collection of urine including the use of a catheter caused Officer Hall to inappropriately participate in the catheterization of Powell was a highly predictable consequence of the omission. Summary judgment is denied.

IV.   **<u>Conclusion</u>**

For the reasons stated above and those set forth on the record during the hearing, summary judgment is denied as to Counts II, VI and Count X. Summary judgment is granted as to Count VIII.  In addition, the Court

finds that the presence of genuine issues of material fact precludes attachment of qualified immunity.

An appropriate Order shall issue.

Dated: September 28, 2016

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE